UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOHN MORGENSTEIN, MICHAEL JACOB, as
Executor of the Estate of Doris Jacob, and ALANTE
CARPENTER individually and on behalf of others
similarly situated,

                          Appellants,

      -v-

MOTORS LIQUIDATION COMPANY f/k/a/
GENERAL MOTORS CORPORATION A Delaware
Corporation,

                           Appellee.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 09 2012

12 Civ. 01746 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

      Plaintiff-appellants appeal the decision and order entered by Bankruptcy Judge Gerber on January 18, 2012, dismissing their claim.

      Plaintiffs seek to represent a putative class of Chevrolet Impala owners whose 2007 and 2008 model Impalas allegedly contained defective rear spindle rods, costing them each $450 in repairs. Plaintiffs contend that, pursuant to 11 U.S.C. § 1144, they are entitled to a "limited" revocation of the confirmation order in the General Motors bankruptcy because, Plaintiffs allege, the order was procured by fraud. Plaintiffs allege that General Motors' failure to list the putative class of creditors in General Motors' Section 521 disclosures to the Bankruptcy Court during Chapter 11 proceeding constituted a fraud on the court. Plaintiffs further allege that General Motors' failure to provide Plaintiffs direct notice as required for all "known creditors" rendered fraudulent General Motors' representations to the Bankruptcy Court that it had satisfied all of its notification obligations.

      In a Decision and Order dated January 18, 2012, Bankruptcy Judge Gerber rejected Plaintiffs' claims, holding that the Complaint failed to plead fraud with sufficient particularity

and that the requested remedy of partial revocation of a confirmation order does not exist. This Court affirms the decision of the Bankruptcy Court in its entirety.

## I. BACKGROUND

The posture of this case derives from Appellants' inability to file and recover a proof of claim either individually or on a class wide basis prior to the entry of the confirmation order in the General Motors bankruptcy proceedings.

As background, General Motors Corporation ("Old GM") filed for Chapter 11 protection on June 1, 2009, and thereafter changed its name to Motors Liquidation Corporation ("MLC"). (09-BR-50026 Docket # 1). On July 5, 2009, the Bankruptcy Court granted Old GM's request for an order authorizing the sale of most of Old GM's assets to a new entity ("New GM") pursuant to 11 U.S.C. § 363. ("Sale Order") (*Id.* at Docket # 2968). The Sale Order provided that New GM would assume all of Old GM's obligations under express warranties. An Order was issued on September 16, 2009, setting November 30, 2009, as the Bar Date, i.e. the last date by which to file a proof of claim. (*Id.* at Docket # 4079).

A Confirmation Order of the Debtor's reorganization plan was entered by the Bankruptcy Court on March 29, 2011. (*Id.* Docket # 9941). The confirmation plan allows general unsecured creditors to receive *pro rata* distributions of shares of common stock in New GM and warrants for the purchase of common stock paid out of a General Unsecured Creditor Trust ("GUC Trust"). Defendant represents, and Plaintiffs do not contest, that approximately 70,000 claims were filed by unsecured creditors prior to the Bar Date. (Opp. Br. at 5). As of December 31, 2011, the GUC Trust contained approximately $1.1 billion in remaining net assets to provide *pari passu* distributions to all remaining disputed claims, which number approximately 1,700. Plaintiffs represented to Judge Gerber at oral argument that they seek funds from this "pot;"

awarding Plaintiffs an award from this "pot" would obviate the need for any claw backs. (A. 364–65; 1/10/12 Tr. at 51–52).

Plaintiffs allege that in July of 2011 they learned of the Impala's rear spindle rod defect from an unrelated lawsuit against New GM in the Eastern District of Michigan. (Compl. ¶ 16; Pl. Br. at 6). Appellants filed a "Complaint for Revocation of Discharge" pursuant to 11 U.S.C. § 1144 on September 26, 2011. Section 1144 allows for revocation of a confirmation order when such order was procured by fraud. Complaints seeking revocation of a confirmation order create adversary proceedings conducted in the bankruptcy court. Fed. R. Bankr. P. 7001(5).

On December 12, 2011, Defendant MLC filed its Motion to Dismiss the Complaint. Defendant argued that (1) plaintiffs were seeking a "partial" or "limited" revocation of a confirmation order, which is not allowed under 11 U.S.C. § 1144, (2) Plaintiffs failed to allege fraud with sufficient particularity to satisfy Rule 9(b), (3) the doctrine of equitable mootness barred the relief requested, (4) Plaintiffs failed to demonstrate excusable neglect regarding their failure to file a timely proof of claim, and (5) Plaintiffs failed to present a viable class pursuant to Fed. R. Civ. P. 23 and Fed. R. Bankr. 7023.

The Bankruptcy Court held oral argument on January 10, 2012, at the end of which it indicated that it would rule against Plaintiffs. (A. 369–71). On January 18, 2012, the Bankruptcy Court issued a written opinion granting Defendant's Motion to Dismiss on the grounds that there is no "partial" revocation permitted under Section 1144 and that Plaintiffs' Complaint failed to satisfy Rule 9(b)'s heightened pleading standard for allegations of fraud. (11-BR-9409 Docket # 42). Because the Bankruptcy Court found dismissal appropriate on these grounds, it did not address Defendant's remaining arguments.

On March 9, 2012, Plaintiffs filed an appeal of Judge Gerber's ruling.

## II.   STANDARD OF REVIEW

A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Fed. R. Bankr. P. 8013. On appeal, the legal conclusions of the bankruptcy court are reviewed *de novo*, but the findings of fact are reversed only when they are "clearly erroneous." *Kuhl v. United States*, 467 F.3d 145, 147 (2d Cir. 2006) (citation omitted) (*per curiam*). If a case is appealed to the Second Circuit, the panel will "look through" the district court's opinion and "review the bankruptcy court's opinion independent of the district court's review." *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012).

## III.   THE COMPLAINT FAILS TO MEET RULE 9(B)'S HEIGHTENED STANDARD FOR PLEADING FRAUD WITH PARTICULARITY

Plaintiffs argue that the Bankruptcy Court was incorrect in applying a "strong inference of fraud" pleading requirement and in holding that Plaintiffs claims fail to meet the pleading standard of Rule 9(b). The Court finds no error in the Bankruptcy Court's ruling.

### A.   Pleading Standard

Defendant's motion to dismiss is governed by Rule 12(b)(6), which is made applicable to adversary proceedings in bankruptcy courts by Fed. R. Bankr. P. 7012(b). "Factual allegations must be enough to raise a right to relief above the speculative level," and a complaint must present facts that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). When alleging fraud in an adversarial bankruptcy proceeding, the plaintiff must meet the heightened pleading standard of Rule 9(b). *In re Delta Air Lines, Inc.*, 386 B.R. 518, 531–32 (Bankr. S.D.N.Y. 2008).

### B.   The Bankruptcy Court Correctly Applied the "Strong Inference" Standard

Section 1144 requires allegations of fraudulent intent. *In re Longardner & Assoc., Inc.*, 855 F.2d 455, 461–62 (7th Cir. 1988); *In re Michelson*, 141 B.R. 715, 725 (Bankr. E.D. Cal.

1991); *Skulsky v. Nyack Autopartstores Holding Co., Inc. (In re Nyack Autopartstores Holding Co., Inc.)*, 98 B.R. 659, 662 (Bankr. S.D.N.Y. 1989) ("[I]ntent to defraud the court is a specific prerequisite for revoking a confirmation order pursuant to 11 U.S.C. § 1144.").

Long-standing case law in the Second Circuit requires plaintiffs to "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995); *Cosmas v. Hassett*, 886 F.2d 8, 12–13 (2d Cir. 1989) ("Although under Rule 9(b) a complaint need only aver intent generally, it must nonetheless allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent."); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("[T]he relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.") (internal quotation marks omitted). "The requisite 'strong inference' of fraud may be established either by (a) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields, Inc.*, 25 F.3d at 1128..

The strong inference standard has been applied to common law fraud, securities fraud, and RICO claims. *Capital Mgt. Select Fund Ltd. v. Bennetti*, 680 F.3d 214, 225 (2d Cir. 2012) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasoning Corp.*, 84 F.3d 629, 633–34 (2d Cir. 1996); *Harborview Value Masterfund, L.P. Freeline Sports, Inc.*, 2012 WL 612358, at *8 (S.D.N.Y. Feb. 23, 2012). Plaintiffs acknowledge that the strong inference standard "has now been applied in a variety of settings." (Pl. Br. at 26).

Nevertheless, Plaintiffs argue that Judge Gerber was mistaken in applying the "strong inference" test and should instead have assessed whether a "fraud on the court" was "of great moment to the public," language that Plaintiffs take from *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944). This formulation does nothing to alter or displace the plaintiffs' obligation to plead a strong inference of fraudulent intent. *Hazel-Atlas*' "great moment to the public" language was the Supreme Court's response to the Third Circuit's holding that a fraudulent expert report introduced in a patent proceeding did not reach levels significant enough to obtain equitable relief. *Id.* at 246. The "great moment" language has nothing to do with the standard for pleading intent and it cannot be used to supplant the long-established "strong inference" standard when pleading fraud in the Second Circuit.

Plaintiffs cite two cases supposedly applying its version of the "*Hazel-Atlas* test," (Opp. Br. at 27), neither of which involved Section 1144 or addressed the scienter requirement for pleading fraud. *Gazes v. Delprete ("In re Clinton St. Food Corp.")*, 254 B.R. 523, 533 (Bankr. S.D.N.Y. 2000); *Tese-Milner v. TPAC, LLC ("In re Ticketplanet.com")*, 313 B.R. 46, 64-65 (Bankr. S.D.N.Y. 2004). These cases are inapposite.

Plaintiffs cite two additional cases in urging that the Court reject the "strong inference" standard for pleading fraud for purposes of Section 1144. (Opp. Br. 28–29, 34–35). Plaintiffs urge the Court to adopt what it purports to be the test for fraud adopted by a bankruptcy court in the Eastern District of California in *In re Michelson*, 141 B.R. 715, 725 (Bankr. E.D. Cal. 1991), specifically that the intent requirement of Section 1144 is met when a person "(1) is obliged to disclose, (2) knows the existence of material information, and (3) does not disclose it." (Pl. Br. at 34). But even assuming *arguendo* the correctness of this analytic framework, it does not rebut the need in this Circuit to plead facts creating a strong inference of such intent, either by showing

6

a motive and opportunity or strong circumstantial evidence of recklessness or conscious wrongdoing. In conjunction with *Michelson*, Plaintiffs cite *Grubin v. Rattet ("In re Food Mgmt. Grp., LLC")*, 380 B.R. 677, 714–15 (Bankr. S.D.N.Y. 2008), a case involving the common law tort of fraud on the court. Yet fraud for purposes of Section 1144 has different elements from common law fraud claims. *See* 8 *Collier's on Bankruptcy* § 1144.05. *Grubin* does not stand for the proposition that there is no intent requirement for claims arising under Section 1144 or that the "strong inference" pleading standard should not apply.

In short, the Bankruptcy Court correctly applied the well-established rule in this Circuit that, pursuant to Rule 9(b), a pleading must contain "a strong inference of fraudulent intent," *Shields*, 25 F.3d at 1128. Plaintiffs' arguments to the contrary are without merit.

      C.  The Bankruptcy Court Correctly Held that the Allegations in the Complaint Fail to Meet the Heightened Pleading Requirement of Rule 9(b)

Plaintiffs' allegations of fraud appear to rest on two pillars: (1) Defendants had a duty to list Plaintiffs' putative class as a scheduled creditor pursuant to 11 U.S.C. § 521 but did not (Compl. ¶ 44–46; Pl. Br. at 29) and (2) Plaintiffs were "known creditors" entitled to notice of the proceedings who did not receive such notice and, as a result, Defendants' representations to the bankruptcy court that they had served a Notice of Bar Date and copies of the Notice Package on all persons with potential claims against the Old GM estate were therefore fraudulent and not in good faith (Pl. Br. at 11–13, 29–30). Plaintiffs insist that their putative class' members were "known creditors" because Old GM issued a Product Service Bulletin to Authorized Chevrolet Dealerships, and initiated a recall as to "Police Package" Impalas ("Police Impalas") for 2007 and 2008 models, (Comp. ¶¶ 6–9), which, Plaintiffs contend, *implies* that Old GM was aware of the defect in consumer Impalas. (Comp. ¶¶ 11–14). Plaintiffs allege that not notifying them directly and not listing them in Old GM's § 521(c) filings constituted "failures in disclosure

7

which were central to the Plan process" and that "[f]ull disclosure would have precluded confirmation due to lack of good faith, discriminatory treatment of similarly-situated creditors, and breach of fiduciary duties." (Comp. ¶ 48; Pl. Br. at 30).

As discussed below, these allegations are insufficient to plead either motive and opportunity or strong circumstantial evidence of conscious misbehavior or recklessness, and therefore fail to satisfy the standard for pleading a strong inference of fraudulent intent. *Shields*, 25 F.3d at 1128.

### 1. Plaintiffs Failed to Plead Motive and Opportunity

When alleging intent based on motive and opportunity, "[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Shields*, 25 F.3d at 1130.

Plaintiffs' allegations of motive with regard to a fraud on the Bankruptcy Court appear to rely on its assertion that "the Confirmation Order affords broad releases to Old GM's pre- and post-petition officer [*sic*], directors, consultants and professionals." (Pl. Br. at 13). Plaintiffs assert that "some of those parties **may** have breached their respective fiduciary duties to Plaintiffs . . . . As a result of these broad releases, Plaintiffs have no right to seek damages from those fiduciaries." (*Id.*) (emphasis added). It is noteworthy that Plaintiffs do not allege that any of these individuals actually did breach fiduciary duties and do not allege that they needed these exculpation provisions vis-à-vis Plaintiffs' putative class. Nor do Plaintiffs contend with the legitimate and "salutary" reasons for including exculpation provisions in a confirmation order.[1]

---

[1] Exculpation Provisions "have a salutary purpose" and "are frequently included in chapter 11 plans, because stakeholders all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties; or simply wish to second guess the decision makers in the chapter 11 case." *In re DBSD North Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (Gerber, J.). Such releases "are permissible under some circumstances

8

Plaintiffs' averments with regards to exculpation provisions are vague and fail to allege even inferentially any motive or opportunity for the alleged fraud.

Plaintiffs allege that GM's motivations to hide the need for a partial recall were: (1) "minimizing the costs of recalls, (2) inducing purchases of defective vehicles, and (3) mollifying the National Highway Safety Administration." (Pl. Br. at 23). But as the Bankruptcy Court noted, Old GM gained nothing from concealing this putative class from the bankruptcy court. *In re Motors Liquidation Co.*, 462 B.R. 494, 506–07 (Bankr. S.D.N.Y. 2012). Old GM was liquidated and those assets that were not transferred to New GM were distributed *pari passu* to creditors. *See id.* The Court fails to ascertain what motive Old GM could have had—or how it could have mattered to Old GM at all—to exclude Plaintiffs' putative class from the group of unsecured creditors receiving payments of approximately twenty-five percent of the amount owed in warrants and stocks in New GM.

In short, just as the Bankruptcy Court, this "Court can find no motive." *In re Motors Liquidation Co.*, 462 B.R. at 494.

### 2. Plaintiffs Failed to Plead Facts Creating Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

Nor have Plaintiffs pleaded "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Acito v. IMCERA Grp, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). The Bankruptcy Court noted that there are no "facts alleged evidencing a decision by the Debtors to deny notice to any of the named plaintiffs . . . ." *In re Motors Liquidation Co.*, 462

---

but not as a routine matter." *In re Chemtura Corp.*, 439 B.R. 561, 611 (Bankr. S.D.N.Y. 2010) (citing *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005)). They are to be used "where the provisions are important to a debtor's plan; where the claims are 'channeled' to a settlement fund rather than extinguished; where the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; where the released party provides substantial consideration; where the plan otherwise provides for the full payment of the enjoined claims; or where creditors consent." *Id.* Judge Gerber permitted these releases in the GM bankruptcy, and did not mention anywhere in his opinion in the present case an inkling of concern that these releases would not have been obtained had the omitted "liabilities" at issue been known.

9

B.R. at 506. Plaintiffs state in their moving papers that Defendant's knowledge of Plaintiffs' putative class, and by extension its knowledge that it was committing a fraud on the bankruptcy court, "follows inferentially from its pre-petition conduct," i.e. alleged "partial recalls" "secret warranties" favoring only a small number of Impala owners and lessees designed to avoid the costs of reimbursing all Impala owners affected by the defective rear spindle-rods. (Pl. Br. at 19–20). This Court agrees with the Bankruptcy Court that this is at best a weak inference based on weak circumstantial evidence where a "strong inference" and strong circumstantial evidence of conscious misbehavior or recklessness are required. *In re Motors Liquidation Co.*, 462 B.R. at 505. Plaintiffs' allegations are insufficient to constitute strong circumstantial evidence of conscious misbehavior or recklessness for purposes of Rule 9(b).

Plaintiffs cite *George v. Celotex Corp.*, 914 F.2d 26, 28 (2d Cir. 1990) and *Caruolo v. A C & S, Inc.*, No. 93-CV-3752, 1999 WL 147740 (S.D.N.Y. Mar. 18, 1999) for the proposition that "a manufacturer is presumed to have the knowledge of an expert concerning its products." (Pl. Br. at 12). But *Celotex* and *Caruolo* were product liability actions where the issue was whether the manufactures "knew or should have known" of the dangers of the product. *Caruolo*, 1999 WL 147740, at *10. For purposes of that inquiry, "a manufacturer is held to knowledge of an expert in the field." *Celotex*, 914 F.2d at 28. The standard for what a manufacturer "knew or *should have known*" for purposes of a product liability case cannot create a presumption as to what Old GM *did* know when it made representations in the bankruptcy court.

Similarly inapposite is Plaintiffs' citation to *In re Equitable Office Building Corp.*, 83 F. Supp. 531, 554 (S.D.N.Y. 1949), which held that the debtor, which was a relatively small company, "may be presumed to have had a more or less intimate knowledge of its financial affairs." *In re Equitable Office Building Corp.* does not, as Plaintiffs contend, stand for the

proposition that a debtor that is a giant multinational corporation is presumed to have knowledge of a relatively minor defect in one of its numerous products when preparing a list of known creditors for the bankruptcy court.

In short, the Bankruptcy Court correctly held that the Complaint fails to meet Rule 9(b)'s heightened pleading standard for fraud. While Plaintiffs would ordinarily be granted leave to amend their Complaint in light of this ruling, such an amendment will be futile because, as discussed below, the Court finds that the remedy of "partial revocation" requested by Plaintiffs does not exist.

## IV.  SECTION 1144 REVOCATION

Plaintiffs alternately contend (a) that Section 1144 may be "partially" revoked and amended and (b) that the Court should completely revoke the confirmation order without restoring all interested parties to the *status quo ante*, and modify the confirmation plan solely to add Plaintiffs' putative class as an unsecured creditor. (*Compare* Reply at 3–4 *with* Reply at 5–8). Neither of these remedies is provided for by Section 1144. At base, Plaintiffs seek a partial revision or a modification of the confirmation order. This Court agrees with Judge Gerber that, subsequent to the entry of a confirmation order, a plan cannot be partially revoked or modified, but instead only completely revoked and rescinded.

### A.  There is no "Partial Revocation" of a Confirmation Order

The Bankruptcy Court was correct in holding that any revocation under Section 1144 must be entire and complete. *In re Motors Liquidation Co.*, 462 B.R. at 501. Plaintiffs appear to have argued in the Bankruptcy Court and in sections of their briefs on this appeal that Section 1144 allows for a confirmation order to be revoked in part.[2] As discussed below, both a textual

---

[2] *See* Pl. Br. at 2 ("Plaintiffs bring this action for a limited, carefully crafted plan revocation"); Reply at 3 ("Revocation, as authorized by Section 1144, need not be 'total, and absolute.'").

analysis and a survey of case law indicate that that Section 1144 does not allow for partial revocations or modifications.

The Court starts by analyzing the text of the statute. Title 11, Section 1144 reads in its entirety:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—
>
> **(1)** contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> **(2)** revoke the discharge of the debtor.

11 U.S.C. § 1144.

The Bankruptcy Court correctly observed that the use of the word "revoke" is by its nature complete and absolute. *See Black's Law Dictionary* 1322 (6th ed. 1990) ("To annul or make void by recalling or taking back. To cancel, rescind, repeal or reverse, as to revoke a license or will."); *Merriam-Webster's Collegiate Dictionary* 1068 (11th ed. 2003) ("to annul by recalling or taking back . . . .").

"When the language of the statue is unambiguous, judicial inquiry is complete." *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.2d 280, 290 (2d Cir. 2002)). Section 1144 does not refer to "modifying," "amending," or "revising;" it refers to "revoking." Nothing in the language of Section 1144 speaks to "partial" or "limited" revocation; the provision simply states that "the court may revoke *such* order . . . ." The statute is clear in providing only for complete revocation, and not for partial revocations or any other kinds of modifications.

12

Viewing Section 1144 in the context of the Bankruptcy Code as a whole further indicates that Section 1144 does not provide for partial revocations or modifications as remedies when a confirmation order is shown to have been procured by fraud. While Section 1144 provides the remedy of a "revocation," other provisions in the Bankruptcy Code allow for "modifications," *see* 11 U.S.C. § 1127 (modifications of plans permitted under certain circumstances *before confirmation*), indicating that Congress did not intend to include modifications as a remedy when a plan is procured by fraud. *See Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal citations and quotation marks omitted); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) ("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is . . . presumed that Congress acts intentionally and purposely.").

Beyond the textual analysis, case law addressing this issue further indicates that Section 1144 does not permit a partial revocation of a confirmation order. *See, e.g.*, *In re Innovative Clinical Solutions, Ltd.*, 302 B.R. 136, 143 (Bankr. D. Del. 2003) (dismissing a fraud claim based on the doctrine of equitable mootness) ("[W]hat Plaintiffs seek here is to modify the release and exculpation provisions of the Plan. This is obviously not a form of relief contemplated by § 1144."); *see also In re East Shoshone Hosp. Dist.*, No. 98–20934–9, 2000 WL 33712301 (D. Idaho April 27, 2000) (applying § 1144 to a Chapter 9 bankruptcy) ("There is nothing in the statute, nor has there been authority provided by the debtor, which recognizes or

13

validates a theory of selective or partial revocation . . . Either an order of confirmation is revoked or it is not.").

The Court is not persuaded by Plaintiffs' argument that *Seedman v. Friedman*, 132 F.2d 290 (2d Cir. 1942), holds that confirmation orders may be partially revoked or modified when they are shown to have been procured by fraud. (Opp. Br. at 17). In *Seedman*, the Second Circuit addressed the rescission of a confirmation order that was procured by a fraud on the court. *Seedman*, 132 F.2d at 292. Control of the debtor in *Seedman* had been turned over to a creditors' committee for the purposes of liquidation, and the creditors' committee withheld material information about the state of the debtor prior to the entry of the confirmation order. *Seedman*, 132 F.2d at 292. The plaintiff was a third party who contracted with the debtor to purchase a substantial amount of the debtor's assets subsequent to the entry of the confirmation order. *Id.* After the fraud was uncovered, the referee rescinded the confirmation order and, to return the parties to the *status quo ante*, rescinded Seedman's post-confirmation order contract as well. *Id.* Seedman objected to the rescission of his contract, which Seedman entered into in reliance on the confirmation order and without any knowledge of the fraud.

The Second Circuit agreed with Seedman, noting that "[i]f contracts formed in the interval between the confirmation of an arrangement and the subsequent setting aside of that confirmation for fraud are to be . . . automatically cancelled, the policy of Chapter XI to re-establish temporarily embarrassed debtors to their former standing in the business world would be substantially nullified, for third parties would wisely refuse to do business with the reorganized debtors subject to such risks." *Id.* at 295. The Second Circuit further wrote:

> "[E]xpress provisions of the Bankruptcy Act support the view that the setting aside of a confirmation order is without prejudice to rights which arise from bona fide transactions theretofore entered into in reliance upon the original order. Thus, Sec. 64 . . . gives priority to debts contracted 'after the confirmation

14

of an arrangement' over debts provable in the arrangement, in the event the arrangement is set aside, while Sec. 386(3), providing **for the modifying or altering** of an arrangement procured by fraud, expressly **protects those not participating in the fraud**, or acquiring rights innocently and for value subsequent to the confirmation of the arrangement."

*Seedman*, 132 F.2d at 295 (emphasis added).

While Plaintiffs seize on *Seedman's* use of the word "modifying," (Pl. Br. at 17), the language in *Seedman* regarding "modifying or altering" a confirmation order derived from then-governing Section 386(3) of the Bankruptcy Act of 1898, as amended in 1938 ("Bankruptcy Act"), Pub. L. No. 75-696, 52 Stat. 840 (1938), which itself used the words "modify or alter," a phrase that was stricken from Section 1144 when Congress adopted the Bankruptcy Code in 1978. Pub. L. No. 95-598, 92 Stat. 2549 (1978)). The "modifying" dicta in *Seedman* was premised on a provision in the Bankruptcy Act that no longer exists in the Bankruptcy Code.[3]

Plaintiffs also cite *In re Michelson*, 141 B.R. 715, 725 (Bankr. E.D. Cal. 1991) as a case in which the "court's revocation was not 'entire.'" (Pl. Br. at 16). This is a mischaracterization of *Michelson*. *Michelson* held that because a serious fraud had been purveyed on the court in that case, Section 1144 applied and that "the order confirming the plan of reorganization must be revoked." *Michelson*, 141 B.R. at 730. The *Michelson* court went on to write that the "the order revoking confirmation must also revoke the discharge of the debtor. The revocation of the discharge does not necessarily preclude a later discharge, rather **it restores the status quo immediately before confirmation**." *Id.* (emphasis added and internal citations omitted). In other words, *Michelson* stands for the opposite proposition for which Plaintiffs cite it. *Michelson* holds that when Section 1144 is applied by a bankruptcy court, the confirmation order must be

---

[3] On June 14, 2012, Plaintiffs filed a motion to present the court with "new authority." This "new authority" consisted of a two-paragraph Second Circuit opinion from 1941, *Levenson v. B & M Furniture Co.*, 120 F.2d 1009 (2d Cir. 1941), which construed Section 386(3) of the Bankruptcy Act. *Levenson* allowed the bankruptcy court to modify a claim and add in a new creditor following a fraud. But then-governing Section 386(3) explicitly allowed alterations and modifications, whereas presently-governing Section 1144 does not.

15

revoked in its entirety and the parties must be returned to the *status quo ante*.[4] There is nothing "partial" about such a revocation.

The Bankruptcy Court was correct in finding that Section 1144 does not allow for partial revocations by its own terms and no case law supports such a proposition.

### B. Subsection (1) of Section 1144 Does not Permit a Court to Modify a Plan or Order a Tailored Revocation

Plaintiffs argue that, "subsection (1) of Section 1144 expressly directs the Bankruptcy Court to modify the plan where conditions so warrant." (Pl. Br. at 17 n.29). In their Reply Brief, Plaintiffs "clarify" this point, stating that they seek "revocation of the confirmation order and, thereafter, permission to file their claims and, in due course, a dividend in *pari passu* with similarly situated unsecured creditors." (*Id.*). Put differently, Plaintiffs assert that it is possible to mechanically and non-disruptively revoke the confirmation order—in reliance upon which millions of shares of stock in New GM have been issued and publicly traded (Opp Br. at 7)—add in Plaintiffs' claims, and re-confirm the order.

Plaintiffs mischaracterize Subsection (1). Subsection (1) requires that an order revoking a plan "contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation." This subsection evinces recognition by Congress of the major consequences of the revocation of a confirmation order on anyone who might have acquired rights in good faith reliance upon it. *In re Motors Liquidation Co.*, 462 B.R. at 502. But it does not provide protections for plan participants, such as unsecured creditors who have received distributions in satisfaction of their claims pursuant to the confirmed plan. While Subsection (1) requires protections for individuals who have acquired rights in reliance on that

---

[4] Such an outcome in this case, where over a hundred million shares in New GM have been distributed to general unsecured creditors, would revive Defendant's equitable mootness argument, which the Bankruptcy Court did not see the need to rule on.

16

order (e.g. someone who purchased New GM common stock from a plan participant), any provision which "tailors" that revocation to avoid rescinding the distributions made to creditors pursuant to the confirmed plan—or to protect those creditors in any way—is beyond the scope of what is provided for in Subsection (1). The requirement of protections for some groups affected by rescission of a plan without any explicit protections for others indicates that Subsection (1) is not a provision that allows for modifications—and does not, as Plaintiffs argue, encompass the flexibility of the "modify or alter" language previously found in Section 386 of the Bankruptcy Act (Reply at 4)—but rather anticipates a disruptive revocation and provides protections for one group of those who will be affected by the revocation, those acquiring rights in reliance on the order, but not others.

Additionally, Plaintiffs' request for a revocation solely to allow for inclusion of their claim is, at base, a request for a *de facto* modification of the confirmation plan, and modifications are not provided for under Section 1144, as discussed in Section IV.A above.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order dismissing this case with prejudice is AFFIRMED. The Clerk of Court is instructed to close this case.

SO ORDERED.

Dated: August 9, 2012
       New York, New York

_____
ALISON J. NATHAN
United States District Judge